ORDERED.

Dated:  January 30, 2017

_____
Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN RE:

JEFFREY EDWARD FERRER,                                Case No. 3:15-bk-03646-JAF
                                                     Chapter 7
    Debtor,
_____/

JEFFREY EDWARD FERRER,

    Plaintiff,                                     Adv. No. 3:16-ap-00141-JAF

v.

LOU SOBH AUTOMOTIVE OF JAX, INC.
D/B/A HONDA OF THE AVENUES,

    Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This proceeding came before the Court for trial on January 25, 2017, on Debtor JEFFREY EDWARD FERRER'S ("Debtor") Amended Complaint, (Doc. 5), for an alleged violation of the automatic stay by Defendant LOU SOBH AUTOMOTIVE OF JAX, INC. D/B/A HONDA OF THE AVENUES ("Lou Sobh Automotive") and Defendant's Answer to the Amended Complaint,

(Doc. 8). Upon the evidence and arguments presented by the parties, the Court makes the following Findings of Fact and Conclusions of Law.

## Findings of Fact

On August 13, 2015, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, which was later converted to a Chapter 7 case. Prior to filing the petition, Debtor purchased a vehicle from Lou Sobh Automotive. Debtor entered a retail-installment sales agreement with Lou Sobh Automotive for the purchase of this vehicle. Debtor admits that, at the time of the purchase, he was contemplating filing a bankruptcy petition; however, Debtor also admits that he gave no indication to Lou Sobh Automotive that he was contemplating bankruptcy at the time of the purchase. Debtor then filed his bankruptcy petition *two days* after purchasing the vehicle. Debtor concedes he did not list Lou Sobh Automotive as a creditor, in his original petition.[1]

After Debtor filed the petition, Lou Sobh Automotive contacted him, requesting he come to the dealership to sign a new retail-installment agreement because the first agreement had gone unfunded, which the evidence indicates occurs from time to time. Debtor claims he referred the dealership's request to his bankruptcy attorney, at the time, but had no knowledge or other evidence of any communication from his then-attorney to Lou Sobh Automotive. The only mention of "bankruptcy" occurred when Debtor told Lou Sobh Automotive that he had retained a bankruptcy attorney. No evidence was presented that either Debtor, his attorney, or anyone else had communicated the filing of any bankruptcy petition or initiation of a bankruptcy case, to Lou Sobh Automotive. On cross exam, Debtor plainly admitted he had no evidence that anyone had communicated the initiation of a bankruptcy case, to Lou Sobh Automotive. Ultimately, a new retail-installment agreement was entered by Debtor and Lou Sobh Automotive, which resulted in

---

[1] *See also* (Doc. 1 in 3:15-bk-03646-JAF, at 37).

lower monthly payments for Debtor. This new installment agreement was then funded/purchased by a third-party bank.

Further, the Finance Coordinator of Lou Sobh Automotive, who received the communication about Debtor retaining a bankruptcy attorney, testified that she regularly processed the funding of retail-installment agreements and that she was familiar with the bankruptcy process. The Finance Coordinator testified, and the Court finds, that she and Lou Sobh Automotive understood that Debtor had simply retained an attorney but had not actually filed a bankruptcy petition. She further testified that, had she known a petition had been filed, Lou Sobh Automotive would not have continued further communication with Debtor. She testified she would have noted the bankruptcy filing in her spreadsheet logs at the dealership, which were available for any finance-department employee to see.

## Conclusions of Law

"It is well established that the filing of a bankruptcy petition acts to automatically stay all efforts outside of bankruptcy . . . to collect debts from a debtor who is under the protection of the bankruptcy court." Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1268 (11th Cir. 2014); see also 11 U.S.C. § 362(a)(3), (6). "In turn, § 362(k) provides that an 'individual injured by any willful violation of a stay provided [by § 362] shall recover actual damages, including costs and attorneys' fees . . . .'" Id.; 11 U.S.C. § 362(k). "A creditor's conduct in violating the automatic stay is willful if the creditor:  1) knew that the automatic stay was invoked and 2) intended the actions, which violated the stay." In re Zajni, 403 B.R. 891, 895 (Bankr. M.D. Fla. 2008) (citing Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1555 (11th Cir. 1996)).

Here, there is no dispute that Lou Sobh Automotive did not receive actual notice of Debtor's bankruptcy filing, particularly in light of Debtor's failure to identify Lou Sobh as a

3

creditor, in his initial petition. Debtor's chief argument is that the communication, wherein Debtor conveyed that he had retained a bankruptcy attorney, constitutes evidence that Lou Sobh Automotive knew a stay had been invoked. However, at best, Debtor's evidence demonstrates only knowledge of the possibility that bankruptcy might be initiated at some later date. Such a communication—without more—does not constitute sufficient knowledge of the stay for purposes of § 362(k). As such, there was no willful violation of the stay by Lou Sobh Automotive.

Additionally, there was absolutely no evidence presented on the issue of damages. Therefore, even assuming *arguendo* that Lou Sobh Automotive had knowingly and willfully violated the automatic stay, Debtor failed to prove "actual damages" as a result of any such violation.

The Court will enter a separate judgment consistent with the foregoing.